RANDOLPH, Presiding Justice,
concurring in result only:
¶21. While the result reached by the plurality is correct, I maintain that the analysis first adopted by this Court in Jones v. Mississippi Department of Transportation[2] simplifies the inquiry and would result in more predictive results for plaintiffs and defendants alike. I agree that the trial court erred in granting immunity under the discretionary-function exception of the Mississippi Tort Claims Act. The fact remains that an employee of the City’s street department dislodged a manhole cover while mowing, which caused water to enter and flood Crum’s house. I fail to see how mowing grass requires any governmental judgment or lends itself to the discretion of an employee. As an eight-year-old, I never would have imagined that to choose whether to mow around an object or to mow over an object (a ministerial decision) would later become the subject of debate in the highest court of any state.
¶22. Were we still using the public-policy function test — the test of immunity advanced by the United States Supreme Court more than two decades ago — the resolution of this case would be quite simple. I did not agree that Brantley’s[3] test was correct when we adopted it. Brantley convolutes the process by requiring both the plaintiff and the defendant to look outside the alleged negligent act to establish immunity or lack thereof. As such, I propose a return to the public-policy function test as adopted by this Court in Jones, 744 So.2d at 260.
¶23. The discretionary-function exceptions of the Federal Tort Claims Act and the Mississippi Tort Claims Act are practically identical.[4] For determining the application of discretionary-function immunity, the United States Supreme Court formulated the “public-policy function test.” See United States v. Gaubert, 499 U.S. 315, 322-23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). This Court adopted the same public-policy function test in our analysis of the MTCA’s discretionary-function exception in Jones, recognizing that the provision in the MTCA was patterned after the identical provision in the FTCA. The Legislature amended the MTCA after we adopted the public-policy function test in Jones and made no intimation that we had adopted an incorrect test or interpretation of the statute. See McDaniel v. Cochran, 158 So.3d 992, 1000 (Miss.2014) (“The Legislature is assumed to be aware of judicial interpretations of its statutes, and ... we must conclude that the legislative silence amounts to acquiescence.”) (internal citations omitted). “[Ajbsent legislative action, [our interpretations] become a part of the statute.” Id. The Legislature’s decision not to change the language of the MTCA should be honored, as should the Jones decision. *854 Brantley inappropriately altered the legislatively endorsed test.
¶ 24. For more than fifteen years, this Court applied the public-policy function test to determine whether the discretionary-function exception applied in a given case. Granted, that test was abrogated in Brantley, I echo. Chief Justice Waller’s lament that its abrogation was both impractical and irrational: -
Based on the almost identical language of the MTCA and [the] FTCA, I believe there is a practical and rational basis for the Mississippi Supreme Court to interpret the MTCA’s discretionary-function exception as the United States Supreme Court has done for its identically worded federal counterpart. Consistency and clarity should be the watchwords in analyzing this heavily litigated area of law.
Brantley, 152 So.3d at 1119 (Waller, C.J., concurring in part and in result). I would rescind the Brantley analysis because it overcomplicates the process of litigating a claim and places the success of a claim on the ability of the injured party’s attorney ' to sift through myriad and sometimes arcane regulations — creating extra layers of proof, which, may have little or no practical effect on the actual negligent act. I would therefore readopt the simpler and more direct public-policy function test. See State ex rel. Moore v. Molpus, 578 So.2d 624, 635 (Miss.1991) (explaining that cases may be overruled when them application is “impractical,” “mischievous in effect,” or “detriment[al] to the public”).
¶ 25. Employing the public-policy function test, we determine (1) whether the activity involved an element of choice or judgment, and if so, (2) whether that choice or judgment involved social, economic, or political policy. Dancy v. East Miss, State Hosp., 944 So.2d 10, 16 (Miss.2006).
¶ 26. Section 21-27-189(b) granted the City discretionary authority “[t]o construct, operate and maintain sewage systems _” Miss.Code Ann. § 21-27-189(b) (Rev.2015). However, once the City exercised that discretionary authority, it became incumbent on its employees to exercise concomitant duties in operation and maintenance — duties which are neither exclusively discretionary nor ministerial. See Fortenberry v. City of Jackson, 71 So.3d 1196, 1204-05 (Miss.2011) (Randolph, J., dissenting). I maintain that “there "is a vast difference between the statutorily supported discretion to [construct, operate, and maintain sewage systems] and the practical, mundane, day-to-day operation and maintenance actions which arise after the exercise of such discretion, to which the statute does not speak.” Id. at 1204.
¶27. An employee of Corinth’s Street Department dislodged a manhole cover while bush-hogging the ditch banks. These facts put this case squarely in line with City of Jackson v. Internal Engine Parts Group, Inc., 903 So.2d 60 (Miss.2005). Engine Parts sustained flood damage when the city failed to inspect and maintain a drainage ditch. Id. at 64. This Court (erroneously) distinguished Engine Parts from Fortenberry becapse, unlike the operation and maintenance of a sewage system, the neglected maintenance of a drainage ditch is not made discretionary by statute. Fortenberry, 71 So.3d at 1200-01. As in Engine Parts, the neglected bush-hogging of a ditch bank in this case is not made discretionary by statute.
¶28. I fail to see how the mower’s choice involved social, economic, or political policy. His job was to cut the grass. Operating a tractor or bush-hog entails no budgetary considerations or resource allocations. Deciding to steer left or right, how high to cut, or what pattern to cut implicates no policy considerations. Oper *855 ating a bush-hog in the scope of one’s employment should be no more protected by discretionary-function immunity than if the operator had run over a child.
¶ 29. In sum, I would revive the public-policy function test. Applying the public-policy function test, the employee’s dislodging a manhole cover while mowing did not implicate public-policy considerations. I would find the circuit court erred in granting summary judgment in favor of the City based on discretionary-function immunity.
PIERCE, J., JOINS THIS OPINION IN PART.

. Jones v. Miss. Dep't of Transp., 744 So.2d 256 (Miss.1999).

. Brantley v. City of Horn Lake, 152 So.3d 1106 (Miss.2014).

. See 28 U.S.C. § 2680(a) (granting immunity for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused”); Miss.Code Ann. § U-46-9(d) (Rev.2012) (granting immunity for any claim "[biased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused”).